Gregory W. Mitchell
THE MITCHELL LAW FIRM, L.P.
1412 Main Street, Suite 500
Dallas, Texas  75202
(972)463-8417 – Office
(972)432-7540 – Facsimile
State Bar ID:  00791285
ATTORNEYS FOR DEBTOR

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| In re: **Jeweltex Enterprises, Inc.** | § | **Case No. 20-40485** |
| | § | |
| *Debtor* | § | **Chapter 11** |

---

### WITNESS AND EXHIBIT LIST

---

TO THE HONORABLE U.S. BANKRUPTCY COURT JUDGE:

Jeweltex Enterprises, Inc. ("**Debtor**") files this *Witness and Exhibit List* in advance of the final hearing on cash collateral to be heard on Wednesday, April 22, 2020, at 10:00 a.m.

<u>Witnesses</u>

Debtor may call one or more of the following witnesses at the hearing:

1. Sam Soueissi
2. Any witness designated by any other party
3. Any rebuttal witnesses

Debtor reserves the right to call and/or cross examine any witness identified by any other party and to call rebuttal witnesses.

<u>Exhibits</u>

A. Declaration of Sam Soueissi
B. Debtor's Income for April, 2020
C. Proposed Cash Collateral Order
D. Cash Collateral Budget

**DATED this 21st day of April, 2020.**

Respectfully submitted,

**THE MITCHELL LAW FIRM, L.P.**

**/s/   Gregory W. Mitchell**
Gregory W. Mitchell
1412 Main Street, Suite 500
Dallas, Texas  75202
(972)463-8417 – Office
(972)432-7540 – Facsimile
State Bar ID:  00791285
E-mail:  greg@mitchellps.com

ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2020, a true and correct copy of the foregoing was served via ECF on counsel for the Movant, as well as all parties receiving electronic notice in this matter.

**THE MITCHELL LAW FIRM, L.P.**

/s/  **Gregory W. Mitchell**
Gregory W. Mitchell
Attorney for Debtor

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: **Jeweltex Enterprises, Inc.** | § | **Case No. 20-40485** |
| | § | |
| *Debtor* | § | **Chapter 11** |

## DECLARATION OF SAM SOUEISSI

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) |
| COUNTY OF DALLAS | ) |

1.      "My name is Sam Soueissi, and I am over eighteen (18) years of age.  I am the owner and representative of the Debtor in this matter.  I am fully competent to make this Declaration.   I have personal knowledge of the facts stated herein, and they are all true and correct to the best of my knowledge.

2.      The Debtor operates out of the Firewheel Mall in Garland, Texas, which has been shut down since early March.

3.      The Debtor has an ongoing and critical need to obtain funds in order to continue the operation of its business.  Without such funds, the Debtor will not be able to pay its payroll and other direct operating expenses and obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate.   At this time, the Debtor's ability to use Cash Collateral is vital to the confidence of the Debtor's vendors and suppliers of the goods and services, to the customers and to the preservation and maintenance of the going concern value of the Debtor's estate.

4.      The Debtor has reached an agreement with Kapitus, the only secured creditor that has participated in this matter, to pay a total of 10% of gross profit collectively to all secured creditors as a minimum adequate protection payment for the duration of this case.

5.      Attached as **Exhibit B** is a true and correct copy of income for the month of April, 2020.

6.      The income and disbursements appearing on the budget attached to the proposed final order on cash collateral are best estimates based on the circumstances as they now exist.   I understand that the Debtor should not incur expenses for any line item for an amount that exceeds the amount for such line item in the budget.   The proposed final order is attached as **Exhibit C**, and the accompanying cash collateral budget is attached hereto as **Exhibit D**.

7.      I declare under penalty of perjury that the statements contained herein are within my personal knowledge and are true and correct."

**EXECUTED this 20th day of April, 2020.**

**/s/ Sam Soueissi**
Sam Soueissi, Declarant

# EXHIBIT B

**Store #1**

|  | Synchrony | Visa Card | Total |
|---|---|---|---|
| 4/7/2020 | 0.00 | 1,623.75 | 1,623.75 |
| 4/13/2020 | 0.00 | 1,128.38 | 1,128.38 |
| 4/15/2020 | 97.43 | 0.00 | 97.43 |
| 4/17/2020 | 0.00 | 498.81 | 498.81 |
| 4/20/2020 | 0.00 | 974.25 | 974.25 |
| Total | 97.43 | 4,225.19 | 4,322.62 |

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: **Jeweltex Enterprises, Inc.** | § | **Case No. 20-40485** |
| | § | |
| *Debtor* | § | **Chapter 11** |

## FINAL ORDER ON USE OF CASH COLLATERAL

Upon the Emergency Motion for Use of Cash Collateral (the "**Motion**") pursuant to §§ 105, 361, 363 and 364 of Title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure 4001, Jeweltex Enterprises, Inc. ("**Debtor**"), subject to the terms and conditions set forth herein, including the (i) grant of mortgages, security interests, liens and claims for the benefit of secured creditors post petition which is co-extensive with Pre-petition liens and (ii) grant of mortgages, security interests, liens and claims in order to provide adequate protection secured creditors as more fully set forth herein, and upon the proceedings held before this Court and good and sufficient cause appearing therefore,

THE COURT HEREBY FINDS:

1.      On February 17, 2020, (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is now operating its business and managing its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee has yet been appointed.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O). Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      An immediate and critical need exists for the Debtor to obtain funds in order to continue the operation of its business.  Without such funds, the Debtor will not be able to pay its payroll and other direct operating expenses and obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate.  At this time, the Debtor's ability to use Cash Collateral is vital to the confidence of the Debtor's vendors and suppliers of the goods and services, to the customers and to the preservation and maintenance of the going concern value of the Debtor's estate.

4.      Substantially all of the Debtor's assets are potentially subject to the Prepetition Liens of two creditors – Kapitus, LLC, and Paypal, including liens on equipment, rents, furniture, fixtures, goods, general intangibles, accounts, contract rights and inventory.

5.      As of the Petition Date, the Debtor and Kapitus were parties to a certain Future Receivables Factoring Agreement (ACH) dated January 9, 2020 ("**FRFA Agreement**") pursuant to which Kapitus provided $150,000 for the purchase of $205,000 in receivables of the Debtor (the "**A/Rs**").  As of the Petition Date, the Debtor owed Kapitus at least $197,162.45. See POC 6. Kapitus also asserts an ownership interest in the Debtor's receivables per the FRFA Agreement. The Debtor's obligations under the FRFA Agreement were collateralized by among other things a Security Agreement by and between the Debtor and Kapitus and the Guaranty between Sam Soueissi (jointly, the "**Security Agreement**"); UCC-1 Financing Statement filed with the Texas Secretary of State (the "**UCC-1**") (all of the foregoing, together with all other documentation executed or delivered in connection therewith, the "**Existing Agreements**").

6.      The Debtor acknowledges and agrees that as of the Petition Date, the Debtor was indebted to Kapitus in the amount of at least $197,163.45 pursuant to the Existing Agreements (the "**Prepetition Debt**").

7.      Pursuant to the Existing Agreements, the Debtor granted Kapitus a security interest in and lien upon all of the personal property assets of the Debtor as specified in the Security Agreement and UCC-1 (the "**Prepetition Liens**"), and which includes, *inter alia*: (i) cash or cash equivalents on hand and on deposit and cash collections of the Debtor; (ii) cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any of the pre-petition collateral; and (iii) accounts and accounts receivable arising from the goods sold or services rendered by the Debtor (collectively, the "**Pre-Petition Collateral**").

8.      The Debtor and Kapitus acknowledge and agree that Kapitus holds a valid, perfected, enforceable, and unavoidable lien on and security interest in and to the Pre-Petition Collateral.

9.       The Debtor agrees and acknowledges that as of the Petition Date, there were no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any portion of the Prepetition Debt, and no portion of the Prepetition Debt is subject to avoidance, recharacterization, or subordination (contractual, equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

10.     The Debtor agrees and acknowledges that all of, *inter alia*, the receivables and cash proceeds generated from the operation of the Debtor's business and the Debtor's inventory constitutes income, proceeds, products, rents, and/or profits of the Pre-Petition Collateral and constitutes "cash collateral" within the meaning of Bankruptcy Code § 363(a) (collectively, the "**Cash Collateral**").

11.     The Debtor further agrees that Kapitus has a perfected lien and security interest in the Cash Collateral in accordance with Bankruptcy Code §§ 361, 363(a) and 552(b).

12.     Pursuant to Bankruptcy Code § 363(c)(3), the Debtor requires the consent of Kapitus or an Order of the Bankruptcy Court to use the Cash Collateral.

13.     The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein to allow the Debtor to obtain the use of Cash Collateral financing is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Order is in the best interests of the Debtor and its estate and creditors as its implementation will, among other things, allow for the continued operation and rehabilitation of the Debtor's existing business.

14.     Kapitus is entitled to receive adequate protection in respect of the Debtor's use of the Pre-Petition Collateral to compensate for any decline in the value thereof resulting from (a) the use of the Cash Collateral, and (b) the use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral (the amount of any such diminution being referred to hereinafter as the "**Adequate Protection Obligations**").

15.     The terms for the Debtor's use of Cash Collateral have been negotiated in good faith and at arm's length, and reflect the Debtor's exercise of prudent business judgment.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT**:

1.     The foregoing findings are hereby incorporated by this reference and made a part of the decretal paragraphs herein.

2.     The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Order necessary to allow the Debtor to use Cash Collateral and subject to the protections and consideration described in this Order in the amounts and for the expenses set forth in the "**Budget**" attached hereto.   The Debtor may file a notice to supplement and extend the Budget on

the docket that includes a supplemented and extended Budget (the "**Notice of Supplemental Budget**").  Parties in interest shall have 14 days to object to the Notice of Supplemental Budget and the supplemented Budget attached thereto.   If there are no objections, then the supplemented Budget shall be the Budget for all purposes herein.   If a party objects, then the objecting party will request a hearing with the Court to consider the supplemental Budget.  The Debtor shall have authority to continue to operate in accordance with the terms of this Order and the Budget and the supplemental Budget, if applicable, until the Court holds a hearing to consider the supplemental Budget.

3.       The Debtor, without the prior written approval of Kapitus and Paypal, should not incur expenses for any line item for an amount that exceeds the lesser of the amount for such line item in the budget and the actual expenditure for such line item. The Debtor is authorized to collect and receive all accounts receivable.

4.       For purposes of this Order, "proceeds" of any of any secured creditor's collateral shall mean Proceeds (as defined in the Uniform Commercial Code) of such collateral.

5.       As security for all Cash Collateral permitted to be used hereunder by the Debtor, Kapitus and Paypal are hereby granted valid, binding, enforceable, and perfected liens (the "**Post-petition Liens**") co-extensive with their pre-petition liens in all currently owned or hereafter acquired property and assets of the Debtor, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds and products , including, without limitation, all cash, goods, accounts receivable, inventory, general intangibles, deposit accounts, machinery, equipment.

6.       To be clear, such liens granted to Kapitus and Paypal shall have the same validity, extent and priority as they existed prior to the filing of the instant bankruptcy case.

7.    <u>Adequate Protection Payments</u>.  As adequate protection in accordance with Section 363(e) of the Bankruptcy Code, the Debtor shall pay to Kapitus and Paypal by the 20th day of each month commencing on May 20, 2020 adequate protection payments in the total amount of 10% of "Gross Profit" determined with reference to the previous month.   Of that total amount, 75% of such amount shall be paid to Kapitus and 25% of such amount shall be paid to Paypal.    The adequate protection payments made by the Debtor to Kapitus and Paypal pursuant to this Court's earlier interim cash collateral orders are hereby ratified and approved on a final basis.   All payments by Debtor to Kapitus shall be remitted via ACH payment.   The Debtor shall provide a monthly statement to Kapitus by no later than the 15th day of each month for the previous month showing the amount that Kapitus is authorized to ACH anytime on or after the 20th day of the month and the calculation of such amount.  The Debtor shall provide such statement to Kapitus by email to the following email addresses:  hfalkowitz@kapitus.com,  cbaez@kapitus.com, nwetmore@kapitus.com and crubio@diamondmccarthy.com.    The Debtor has provided Kapitus with a voided check and written authorization allowing Kapitus to ACH debit from the account set forth on the voided check in accordance with the payment terms set forth in the prior interim orders and this Order.  These adequate protection payments shall be applied to the Debtor's obligations to Kapitus in accordance with the Existing Agreements.   The Debtor and Kapitus each reserve the right to seek to modify these adequate protection payments to a fixed periodic payment any time after July 2020.

8.    <u>Adequate Protection Liens</u>. As adequate protection for Kapitus's interests in the Prepetition Collateral, and to the extent that the Cash Collateral is utilized by the Debtor, for the purposes of providing adequate protection within the meaning of Bankruptcy Code §§ 361 and 363, Kapitus is hereby granted (effective and perfected to the extent of pre-petition liens as of the

Petition Date and without the necessity of the execution, recording or filing of mortgages, security agreements, pledge agreements, financing statements, deposit control agreements, or other documents) valid and perfected replacement security interests (to the extent of pre-petition security interests) in, and liens on (the "**Adequate Protection Liens**"), the same type of post-petition assets in which Kapitus holds valid and perfected liens prior to the Petition Date and all cash or other proceeds generated post-petition by the Prepetition Collateral (the "**Collateral**") to the same extent, validity and priority as existed on the Prepetition Collateral. The Adequate Protection Liens shall constitute perfected liens on all of the Collateral as to which Kapitus held a valid and perfected lien as of the Petition Date to the same extent, validity and priority as existed on the Prepetition Collateral.  Kapitus's liens against the Debtor's Cash Collateral shall extend to any account holding such Cash Collateral, regardless of whether Kapitus has control over such account, and encumbers any Cash Collateral held in debtor-in-possession accounts required by applicable law.

9.      <u>Extent of Adequate Protection Liens</u>. The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in this case, or any case under chapter 7 of the Bankruptcy Code upon the conversion or dismissal of this chapter 11 case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Case**") to the same extent, validity and priority as existed on the Prepetition Collateral.  Except as provided herein, the Prepetition Liens and Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest hereafter granted in this case or any Successor Case, and shall be valid and enforceable upon the dismissal of this case or any Successor Case, to the same extent, validity and priority as existed on the Prepetition Collateral. The Adequate Protection Liens

shall not be subject to Bankruptcy Code §§ 510, 549 or 550. No lien or interest avoided and

preserved for the benefit of the estate pursuant to Bankruptcy Code § 551 shall be made *pari passu*

with or senior to the Prepetition Liens or Adequate Protection Liens.  The Adequate Protection

Liens shall not extend to the proceeds of avoidance actions under chapter 5 of the Bankruptcy

Code.

10.    Perfection of Adequate Protection Liens. This Order shall be sufficient and

conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, to

the extent consistent with pre-petition liens, without the necessity of filing or recording any

mortgage, financing statement or other instrument or document which may otherwise be required

under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect

(in accordance with applicable law) the Adequate Protection Liens, or to effect the priorities

acknowledged and/or granted herein. The Debtor is authorized and directed to execute and deliver

promptly to Kapitus any such mortgage, financing statement or other instrument or document as

Kapitus may reasonably request. Kapitus may file photocopies of this Order as a financing

statement or mortgage with any filing or recording office or with any registry of deeds or similar

office, in addition to or in lieu of such financing statement, notices of lien, mortgage or similar

instrument.

11.    Adequate Protection Superpriority Claims. Kapitus is entitled to receive adequate

protection in respect of the Debtor's use of the Prepetition Collateral to compensate for any decline

in the value thereof resulting from (a) the use of the Cash Collateral, and (b) the use, sale, lease,

or depreciation or other diminution in value of the Prepetition Collateral (the amount of any such

diminution being referred to hereinafter as the "**Adequate Protection Obligations**"). As further

adequate protection for the Debtor's Adequate Protection Obligations, Kapitus is granted as and

to the extent provided by Bankruptcy Code §§ 503(b), 507(a) and 507(b), an allowed superpriority administrative expense claim in this chapter 11 case and any Successor Cases in the amount of the Adequate Protection Obligations and to the same extent, validity and priority as existed on the Prepetition Collateral (the "**Adequate Protection Superpriority Claims**"), subject to the Carve-Out in paragraph 19 hereof.

12. <u>Priority of Adequate Protection Superpriority Claims</u>. The Adequate Protection Superpriority Claims shall have priority over all other administrative expense claims and unsecured claims against the Debtor's estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to Bankruptcy Code §§ 326, 328, 330, 331, 364, 365, 503(a), 506(c), 507(a), 507(b), and 546(d) (to the extent permitted by law), subject to the Carve-Out in paragraph 19 hereof, to the same extent, validity and priority as existed on the Prepetition Collateral.

13. <u>No § 506(c) Surcharge.</u> As to Kapitus, the Debtor acknowledges that it has hereby waives the right to surcharge all Collateral, including but not limited to the Cash Collateral, under § 506(c) of the Bankruptcy Code.

14. <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code § 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims and to make the Adequate Protection Payments; (b) permit the Debtor to perform such acts as Kapitus may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtor to take any other actions to effectuate the terms of this Order, provided, however, any stay relief with

respect to the exercise of remedies shall be in accordance with such provisions below or as otherwise ordered by the Court.

15. <u>Debtor's Obligations</u>. The Debtor shall:

(a) Utilize Cash Collateral to pay only the Debtor's normal and regular expenses of the operation of its business, pursuant to the Budget;

(b) Account for all of the Debtor's expenditures in monthly operating reports in accordance with the Office of the U.S. Trustee's guidelines, which the Debtor shall timely file with the Bankruptcy Court and send to Kapitus's counsel and the Office of the United States Trustee;

(c) Maintain all insurance policies required to conduct its business, including without limitation, general liability insurance and workers' compensation insurance, and obtain such additional insurance in the amount as is appropriate for the business in which the Debtor is engaged, naming Kapitus as loss payee and certificate holder on all policies. The Debtor shall provide Kapitus with proof of all such coverage upon request, as well as prompt notification of any change in such coverage which may hereafter occur; and

(d) The Debtor shall provide Kapitus and its representatives, employees, experts or consultants reasonable access during normal business hours to the business offices of the Debtor to enable such individuals to conduct an examination of the Collateral and for inspecting and copying the Debtor's business records.

16. <u>Disposition of Collateral</u>. The Debtor shall maintain, safeguard, and protect and shall not sell, transfer, lease, encumber or otherwise dispose of, or allow the disposal of, any

portion of the Collateral outside of the ordinary course of its business without further Order of the Court.

17. <u>Events of Default</u>. The occurrence of any of the following events, unless waived by Kapitus in writing, shall constitute an event of default, albeit as to ¶17 (a), (c), (d), and (e) only, such event shall not be an Event of Default unless such event of default is not cured after seven days' written notice to the Debtor and its counsel at their addresses listed below (collectively, the "**Events of Default**"):

(a) The failure by the Debtor to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Order or the Existing Agreements (except as may be modified by this Order), but only as they relate to duties and obligations owed to Kapitus;

(b) The entry of an order by the Court granting the Debtor's landlord  relief from or modifying the automatic stay under Bankruptcy Code § 362(a) (unless such order is an agreed order, and the stay remains in effect);

(c) Dismissal of this chapter 11 case or conversion of this chapter 11 case to a chapter 7 case, or appointment of a chapter 11 trustee or examiner, or other responsible person;

(d) A material default by the Debtor in reporting financial or operational information as and when required under the Existing Agreements; and/or

(e)

18. <u>Rights and Remedies upon Termination Date</u>. Unless otherwise agreed to in writing by Kapitus, after the occurrence of an Event of Default (in the event of the occurrence of an event set forth in § 17(b) or an uncured event of default in the event of the occurrence of an event set

forth in § 17(a), (c), or  (d)  herein) (the "**Termination Date**"): (a) Debtor's right to use Cash

Collateral shall be immediately terminated, (b) the automatic stay as to Kapitus's Collateral shall

be immediately vacated, and (c) Kapitus may immediately exercise any and all rights and remedies

permitted by applicable law to enforce its liens and security interests in and to the Collateral to the

same extent, validity and priority as existed on the Prepetition Collateral, (d) in the event of an

Event of Default set forth in ¶ 17(b) herein, without further order of the Court, and (e) in the event

of an Event of Default set forth in ¶17(a), (c), or (d) herein, by settling an order granting such

relief, together with an affidavit of default, on three business days' notice upon Debtor's counsel,

the Office of the United States Trustee, and Kapitus's counsel, and any person or entity filing a

notice of appearance in the Debtor's case, during which time the Debtor may counter-settle an

order permitting further use of Cash Collateral or the continuance of the automatic stay.

Notwithstanding any terms to the contrary contained herein, the Debtor shall be entitled to cure a

default under ¶17(a), (c), or (d) only two times in the aggregate and upon a third default, Kapitus

may exercise all available rights and remedies.

19.    <u>Carve Out</u>. The Adequate Protection Liens and the Adequate Protection

Superpriority Claims shall be subordinate solely to the following (together, the "**Carve Out**"):

(a) fees under 11 U.S.C. § 330, 28 U.S.C. § 1930 and 31 U.S.C. § 3717, (b) unpaid professional

fees that are set forth in the Budget as of the Termination Date, and (c) the costs of administrative

expenses not to exceed $5,000.00 in the aggregate that are permitted to be incurred by any chapter

7 trustee in the event of a conversion of the Debtor's chapter 11 case pursuant to Bankruptcy Code

§ 1112.

20.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. The

rights of any creditor, party in interest or committee, whether formal or informal, including any

Creditors' Committee, to dispute or challenge the validity, perfection, extent, amount and priority of Kapitus's claims and liens and/or the right to dispute Kapitus's right to any Adequate Protection Payments authorized under this Order (collectively, a "**Challenge**") are expressly preserved for sixty (60) days from the date that counsel for a Creditors' Committee has been retained, if a Creditors' Committee is formed, and as to all other parties in interest, sixty (60) days from the date that the Court enters this Order (the "**Challenge Period**"). Upon the expiration of the Challenge Period (the "**Challenge Period Deadline**"), without the filing of a Challenge: (a) any and all such Challenges by any party (including, without limitation, any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this chapter 11 case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, and (b) all of the Debtor's stipulations, acknowledgements, waivers, releases, affirmations and other stipulations to the priority, extent, and validity as to Kapitus's claims, liens, and interests shall be of full force and effect and forever binding upon Kapitus, the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this chapter 11 case and any subsequent chapter 7 case. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Creditors' Committee or any other statutory committee appointed in the chapter 11 case, standing or authority to pursue any cause of action belonging to the Debtor's estate.  The costs incurred in any such Challenge shall not be paid from the Carve Out, other than expenses of investigation.

       21.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

22.     No Liability to Third Parties. In not objecting to the Debtor's use of Cash Collateral

under the terms set forth herein or in taking any other actions related to this Order, Kapitus (i) shall

have no liability to any third party except to the extent permitted by law; and (ii) shall not owe any

fiduciary duty to the Debtor, its creditors, its estate, or to each other.  Kapitus's relationship with

the Debtor shall not constitute or be deemed to constitute a joint venture or partnership with the

Debtor.

23.     Rights Reserved.  Notwithstanding all terms to the contrary stated herein, this Order

expressly reserves, and shall not be construed in any way as a waiver or relinquishment of, any

rights or remedies, expressly or implicitly, that Kapitus may have at law and in equity, including

but not limited to:  (i) under the existing financing documents;   (ii) Kapitus's right to seek any

other or supplemental relief in respect of the Debtor, including the right to seek additional adequate

protection or restriction on Cash Collateral (without prejudice to any other person's right to object

to or otherwise oppose such additional adequate protection or restriction on Cash Collateral); (iii)

Kapitus's right to object to impermissible use of Cash Collateral; (iv) Kapitus's agreement,

consent, or acquiescence to the terms of any plan by virtue of any term or provision of this order;

(v) Kapitus's right to assert any other rights, remedies, or defenses available to it to respond to any

motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities

to respond being specifically reserved by Kapitus; (vi) the rights of Kapitus with respect to the

Debtor's sale of its accounts receivables; (vii) Kapitus's agreement, consent, or acquiescence to

the terms of any plan of reorganization or treatment of its claim by virtue of any term or provision

of this order; (viii) any of the rights or remedies of Kapitus under the Bankruptcy Code or under

non-bankruptcy law, including, without limitation, (a) the right to request modification of the

automatic stay of Bankruptcy Code § 362, (b) the right to request dismissal or conversion of this

chapter 11 case; (c) all rights and remedies under the Uniform Commercial Code; and (d) all rights and remedies under the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* and any other applicable law.  The Debtor reserves the right to object to the payment of default interest, and any portion of Kapitus's attorney's fees and expenses that the Debtor, in good faith, believes are not reasonable provided, however, nothing herein shall be construed to impair Kapitus's rights to seek the payment of default interest and the payment of their attorney's fees and expenses from the Debtor.  Nothing herein contained shall prejudice the right of Kapitus to seek modification, extension, or termination of this order.

24.     <u>No Admission</u>:  Neither this Order, nor Kapitus's consent to the entry of this Order shall constitute an admission by Kapitus that the protection to Kapitus is adequate for any future period of time.   Notwithstanding entry of this Order, Kapitus may seek relief to modify or supplement its adequate protection.   Further, neither entry of this Order, nor consent to this Order shall constitute an agreement by Kapitus to the treatment of Kapitus's claim under any plan.

25.     <u>Additional Documents</u>: The Debtor shall promptly provide to Kapitus such additional or other financial information as Kapitus may from time to time reasonably request.

26.     <u>Binding Effect</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon the Debtor, Kapitus, all other creditors of the Debtor, any committee appointed in this chapter 11 case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this chapter 11 case, any chapter 7 case, or upon dismissal of this chapter 11 case or any chapter 7 case.  However, nothing herein shall prevent Kapitus and/or PayPal from seeking any form of relief under the Bankruptcy Code.

27. <u>Modification, Amendment or Vacatur of Order</u>. In the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowance, enforceability or non-availability of any advances, payments or use of Cash Collateral whether previously or hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to Kapitus hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

28. <u>Survival</u>. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any chapter 11 plan in this case; (b) converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing this chapter 11 case; (d) the appointment of a chapter 11 trustee or examiner; or (e) pursuant to which this Court abstains from hearing this chapter 11 case. The terms and provisions of this Order, including the claims, liens, security interests and other protections granted pursuant to this Order, notwithstanding the entry of any such order, shall continue and shall maintain the same extent, validity and priority as provided by this Order.

29. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Order according to its terms.

#### END OF ORDER ####

**Order prepared and submitted by:**

**/s/ Gregory W. Mitchell**
Gregory W. Mitchell
The Mitchell Law Firm, L.P.
1412 Main Street, Suite 500
Dallas, Texas  75202
(972)463-8417 – Office
(972)432-7540 – Facsimile
greg@mitchellps.com – E-mail
State Bar ID: 00791285
Counsel for Debtor

# EXHIBIT D

Jeweltex, Inc. dba Sam's Fine Jewelry
170 Cedar Ridge Drive
Garland, Texas  75040
Budget Overview
Jeweltex Proposed Budget

| | April 20-26 | Apr 27-May 3 | May 4-31 | June | July |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Sales & Repair | | 3000 | 50000 | 65000 | 70000 |
| Total Income | 0 | 3000 | 50000 | 65000 | 70000 |
| | | | | | |
| **Cost of Goods Sold** | | | | | |
| Cost of Sales & repair | | 1500 | 23500 | 30550 | 32900 |
| | | | | | |
| Total Cost of Good Sold | 0 | 0 | 23500 | 30550 | 32900 |
| | | | | | |
| **Gross Profit** | 0 | 1500 | 26500 | 34450 | 37100 |
| | | | | | |
| | | | | | |
| **Expenses Section 1** | | | | | |
| Bank Charges | | 36 | 36 | 36 | 36 |
| Credit card Processing Fees | | 105 | 1500 | 1625 | 1750 |
| Dues and Subscriptions | 200 | 200 | 400 | 400 | 400 |
| Advertising | 250 | 250 | 800 | 800 | 800 |
| **Insurance** | | | | | |
| jewelers Block | | 1777 | 1777 | 1777 | 1777 |
| Health | 1890.72 | | 1890.72 | 1890.72 | 1890.72 |
| General Liability | | | 200 | 200 | 200 |
| | | | | | |
| | | | | | |
| **Payroll** | | | | | |
| Salaries and Wages | | 2700 | 11000 | 11000 | 11000 |
| | | | | | |
| Total Payroll | 0 | 2700 | 11000 | 11000 | 11000 |
| | | | | | |
| **Expenses Section 2** | | | | | |
| Rent | | | | 10000 | 10000 |
| Website | | | 219 | 219 | 219 |
| Telephone/internet | 500 | | 900 | 900 | 900 |
| Security | 296 | | 296 | 296 | 296 |
| Office Supplies | | | 80 | 80 | 80 |
| Shipping/Delivery | | 240 | 240 | 240 | 240 |
| U.S. Trustee Quarterly Fees | | | 650 | | |
| | | | | | |
| **Loans Payments** | | | | | |
| Loan Builder Paypal | | 45 | 662.5 | 861.25 | 927.5 |
| Kapitus  april 10 and 24th auto draft | | 105 | 1987.5 | 2583.75 | 2782.5 |
| **Total Expense** | 3136.72 | 5458 | 22558.72 | 32908.72 | 33298.72 |
| | | | | | |
| | | | | | |
| **Net Income** | ($3,136.72) | ($3,958.00) | $3,941.28 | $1,541.28 | $3,801.28 |